UNITED STATES of America, Appellee,

v.

Gerald George WEIR, Appellant.

No. 81–1009.

United States Court of Appeals,
Eighth Circuit.

Sept. 2, 1981.

Roxanne Barton Conlin, U. S. Atty., Terry Wright, Asst. U. S. Atty., Des Moines, Iowa, for appellee.

Gerald George Weir, pro se.

Before ROSS, Circuit Judge, GIBSON, Senior Circuit Judge, and STEPHENSON, Circuit Judge.

PER CURIAM.

Gerald George Weir appeals *pro se* from the district court's[1] grant of summary judgment in favor of the United States in Weir's petition for post-conviction relief brought pursuant to 28 U.S.C. § 2255.

Weir and his co-defendant, Daniel Wesley Davis, were convicted by a jury of bank robbery in violation of 18 U.S.C. § 2113(d); each was sentenced to twenty years' imprisonment. Due to error, primarily in the admission of "other crimes" evidence, this court reversed the conviction and ordered a new trial. *United States v. Weir*, 575 F.2d 668 (8th Cir. 1978). Upon retrial, both defendants were again found guilty of the offenses charged and again sentenced to twenty years' imprisonment. The Eighth Circuit affirmed those convictions in *United States v. Davis*, 597 F.2d 648 (8th Cir. 1979).

This proceeding began when Weir filed his section 2255 petition, *pro se*, in 1979. The petition alleged trial counsel was ineffective in failing to hire an independent expert to evaluate hair samples taken from Weir and in failing to object, preserve for error, or raise on appeal the fact that hair samples were taken without defendant's consent. It also alleged the seizure of the hair samples violated the fourth amendment in that no consent was obtained and unreasonable force was administered. The district court denied Weir's motion for summary judgment, but granted that of the Government.

■ The controversy surrounding the taking of Weir's hair samples results from the following incident. FBI agents investigating the bank robbery recovered clothing, including ski masks, which an informant told them had been worn by Davis and Weir in the robbery. According to the investigative report made at the time, two FBI agents came to the Story County, Iowa, jail where Weir and Davis were in custody. They identified themselves and advised Weir of his rights, whereupon Weir stated he understood his rights but did not wish to sign a form to that effect. Agent Stephenson explained to Weir that he wished to take hair samples from Weir's head and beard. Weir replied that he would voluntarily comply, but that the agents "could certainly hear about this in court." Agent Mall specifically asked Weir if he was submitting voluntarily to the taking of the hair, but just protesting because he did not think it was right. When Weir responded that that was correct, the agents proceeded to take samples of hair from Weir's head, beard, and mustache by combing and plucking the same. Weir substantiates this version of the incident only in part. He claims that the agents told him they would take

1. The Honorable William C. Stuart, Chief Judge, United States District Court for the Southern District of Iowa.

the samples whether he liked it or not, and that he submitted only because he believed there would be physical violence if he did not submit.

On appeal Weir claims the district court erred in denying his motion for summary judgment because (1) the hair samples were taken without his consent and by use of unreasonable physical force in violation of the fourth amendment, and (2) he was denied effective assistance of counsel in violation of the sixth amendment due to his attorney's failure to hire an independent hair expert. Weir does not raise ineffective assistance of counsel due to the attorney's failure to object to the admission of the hair samples.

As we begin our inquiry we note the proposition that "the Fourth Amendment's proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner." *Schmerber v. California*, 384 U.S. 757, 768, 86 S.Ct. 1826, 1834, 16 L.Ed.2d 908 (1966). Initially assuming, *arguendo*, that Weir did not consent to the taking of his hair, we must decide whether the FBI agents were justified in the first instance in requiring Weir to give the samples, and whether the manner of taking respected reasonableness standards of the fourth amendment. *Id.*

Unquestionably, the Government had good reason to examine Weir's hair. The FBI had previously recovered clothing which, according to an informant, Weir wore in the robbery; strands of hair found on a ski mask were to be compared with Weir's hair.

As *Schmerber* held, the mere fact of lawful arrest does not necessarily justify the intrusion of a search beyond the body's surface. It must still be determined if the search was reasonable. The facts of Weir's case are similar to the facts in *United States v. D'Amico*, 408 F.2d 331 (2d Cir. 1966). There, a federal agent, without consent or a search warrant, clipped several strands of hair from D'Amico's head while he was in custody. The Second Circuit, while conceding the seizure might be subject to fourth amendment considerations, held:

> Here there was only the slightest intrusion (if indeed there was any intrusion at all): the clipping by the officer of the few strands of hair from appellant's head was so minor an imposition that appellant suffered no true humiliation or affront to his dignity * * *. [A] search warrant was not required to justify the officer's act.

408 F.2d 331, 333. Comparing the taking of hair to the taking of fingerprints, which is permitted when done pursuant to a lawful custodial arrest, the court found taking hair to be no more offensive. While the Ninth Circuit has held in one instance that the taking of a hair sample violated the fourth amendment, that case rested on its circumstances, which were far more egregious than those here. *Bouse v. Bussey*, 573 F.2d 548 (9th Cir. 1977). In *Bouse*, when the defendant failed to consent to the taking of a sample of his hair, two officers unzipped his uniform and forcibly pulled the hair. The appellate court excluded that evidence on the basis that Bouse "was subjected to a painful and humiliating invasion upon the most intimate parts of his anatomy." *Id.*, 573 F.2d at 550. Because the intrusion upon Weir's person was so minor, even if it could be said that he did not consent to the search and seizure, fourth amendment rights were not implicated.

Weir has also raised on appeal the contention that his trial attorney was ineffective in failing to procure an independent expert to analyze and compare the various hair samples admitted at trial. Counsel submitted an affidavit in support of the Government's motion for summary judgment in which he gave several reasons for failing to hire an expert. One of the reasons was counsel's belief that, had he hired an expert, he would have been forced to disclose the results to the Government. In the view of the district court it was irrele-

vant that counsel may have been incorrect in his understanding of the discovery rules, because his other reasons were clearly in the realm of trial tactics. In fact the district judge, who also sat as the trial judge, thought "it was good trial strategy for defense counsel not to attempt to weaken his testimony by cross-examination or to call further attention to the hair samples testimony. Detailed examination might well have strengthened, rather than weakened the expert's opinion." Memorandum Opinion at 2–3.

 To prove a claim of ineffective assistance of counsel, a defendant must show "that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and that he was prejudiced thereby." *United States v. Hood*, 593 F.2d 293, 297 (8th Cir. 1979); *United States v. Easter*, 539 F.2d 663, 666 (8th Cir.), *cert. denied*, 434 U.S. 844, 98 S.Ct. 145, 54 L.Ed.2d 109 (1966). Moreover, the trial counsel's choice of trial strategy, even when later proved incorrect, does not without more amount to ineffective assistance of counsel. *Drake v. Wyrick*, 640 F.2d 912 (8th Cir. 1981); *United States v. Rhoads*, 617 F.2d 1313, 1319 (8th Cir. 1980). In the instant case, the decision not to hire an independent expert was not only trial strategy, but most probably good trial strategy. The sixth amendment claim is therefore without merit, and Weir's conviction is affirmed.