STATE of Tennessee, ex rel., James Edward BODKINS, Plaintiff/Appellee,

v.

Howard G. COOK, etc., et al., Defendants/Appellants.

and

STATE of Tennessee, ex rel. Mark ENGLAND, Plaintiff/Appellee,

v.

Howard G. COOK, etc., et al., Defendants/Appellants.

Court of Appeals of Tennessee, Western Section.

Oct. 6, 1981.

Permission to Appeal Denied by Supreme Court Feb. 22, 1982.

Jerry L. Smith, Asst. Atty. Gen., Nashville, for defendants-appellants.

Andrew J. Shookhoff, Vanderbilt Legal Clinic, Vanderbilt School of Law, Nashville, for plaintiff-appellee.

TOMLIN, Judge.

These two cases have been consolidated for presentation to this Court. Both juveniles, at the time their petitions were filed, were confined by the Department of Correction at Spencer Youth Center in Davidson County. Bodkins had been committed to the department from Gibson County, and England had been committed from Macon County. Each inmate filed a petition for writ of habeas corpus in the Chancery Court of Davidson County, alleging that the relief afforded them under the Juvenile Post-Commitment Procedures Act was inappropriate and ineffective, and that their commitment to the Tennessee Department of Correction was illegal. The state filed motions to dismiss on the grounds of lack of subject-matter jurisdiction in Davidson County.

The Honorable Robert Brandt, Chancellor, in separate hearings, considered the arguments on the state's motion to dismiss, as well as the merits of the petitioners' claim at the same time. Final decrees were entered in each case, overruling the state's motion to dismiss, declaring that the relief under the Juvenile Post-Commitment Procedures Act was inappropriate and ineffective, and thus that the Chancery Court of Davidson County had jurisdiction to entertain the writ. Based on a finding of illegal commitment, the chancellor ordered each inmate released.

The same issue is presented to this Court in both cases—that is, whether or not the chancellor erred in denying the state's motion to dismiss for want of jurisdiction, and in so doing finding that the Juvenile Post-Commitment Procedures Act provided ineffective and inappropriate relief. For the reasons set forth below, we respectfully reverse the trial court in each case.

It will not be necessary to go into the merits of the commitment proceedings. A consideration of the action of the trial court in each case on respondents' motion to dismiss will be sufficient. In their motion to dismiss, the respondents contend that the provisions of the Juvenile Post-Commitment Procedures Act, as amended, preclude the Chancery Court of Davidson County from exercising subject matter jurisdiction over the case.

T.C.A. Sec. 37–1703 provides in part as follows:

37–1703. *Filing of petition—Designation of chancellor or judge to hear and determine petition.*—To begin proceedings under this chapter, the petitioner shall file a written petition with the clerk of the chancery or circuit court in the county in which the commitment occurred, naming the state of Tennessee as the respondent. . .

T.C.A. Sec. 37–1708, as amended by Chapter 752 of the Public Acts of 1980, reads as follows:

37–1708. *Applications for habeas corpus—When allowed.*—An application for a writ of habeas corpus on behalf of a petitioner entitled to apply pursuant to this chapter shall not be entertained if it appears that the applicant has failed to apply for relief pursuant to this chapter with the chancery or circuit court in the county of commitment, unless the petitioner establishes that an application under this chapter would be inadequate or ineffective.

The position of respondents is that the petitioner in each case has failed to file a petition under the Juvenile Post-Commitment Procedures Act in the county of his commitment, and further, that they have failed to establish that such an application would be either inadequate or ineffective.

There are some differences in the issues raised and procedures followed in the two cases that should be noted. In *Bodkins*, the petitioner challenged the constitutionality

of the amendment to the Juvenile Post-Commitment Procedures Act, designated as Chapter 752 of the Public Acts of 1980, codified as T.C.A. Sec. 37–1708. In addition to their answer, the respondents also filed a motion to dismiss.

In support of the motion to dismiss the petition of *England*, the respondents filed sworn affidavits, executed by the circuit judge and chancellor, respectively, in whose jurisdiction Macon County lies, to the effect that the England case would be given an expedited hearing, and that in substance the procedures prescribed by the Juvenile Post-Commitment Procedures Act would be followed. The chancellor below treated respondents' motion to dismiss as a motion for summary judgment, in light of the supporting affidavits. No counter-affidavits of any type were filed by petitioners. Over objection of counsel for respondents, the chancellor permitted one of the counsel of record for the petitioner to testify in *Bodkins*, in opposition to respondents' motion to dismiss. In *England*, the chancellor allowed petitioner to put on proof in opposition to respondents' motion for summary judgment in the form of a transcript of Andrew J. Shookhoff's testimony in the *Bodkins* case, (Mr. Shookhoff being a clinical instructor at Vanderbilt Law School and the supervisor of the Vanderbilt Legal Aid Society), as well as live testimony of a former supervisor of the Vanderbilt Legal Aid Society.

In overruling respondents' motion to dismiss in *Bodkins*, the chancellor held that the 1980 amendment to the Juvenile Post-Commitment Procedures Act, was unconstitutional, as it amounted to a suspension of the writ of habeas corpus. In holding that the remedy provided by the Act was inadequate, in *Bodkins* the court said in part:

... The petitioners confined at the Spencer Youth Center in Nashville. Under an arrangement between the Department of Corrections and the Legal Aid Society at Nashville's Vanderbilt Law School, law students and supervising attorneys provide legal assistance to inmates at Spencer. This assistance is the only legal assistance to which the confined juveniles have access. The legal assistance provided by the Vanderbilt students and attorneys is available only in Nashville, with a few exceptions not here relevant. There is no evidence before the court that there is any comparable program in or near Gibson County. (T.R. 5–6).

In overruling the respondents' motion for summary judgment in *England*, and declaring the act to be inadequate and ineffective in this case, the court said in part:

As in other juvenile habeas corpus cases this court has considered, there is no attorney available to Mark England to file and prosecute a post-commitment petition in the county of commitment. To have attorneys in Nashville merely assist children in preparing petitions to mail to a court clerk in an unknown (sic) county does not constitute effective and adequate representation...

Subsequent to the entry of a final decree in England, the opinion of the Supreme Court in the case of *State, ex rel. Huskey, et al. v. Hatler, et al.*, 606 S.W.2d 534 (Tenn. 1980), was released. This case dealt with many of the problems faced in both cases under consideration. Respondents filed a motion to reconsider in *England*. In the lower court's order denying the motion, the chancellor noted that in the *Huskey* case, the Supreme Court held that the burden of showing the inadequacy of the relief available under the Juvenile Post-Commitment Procedures Act was on the petitioner, in order to maintain a habeas corpus action. It distinguished *Huskey* from *England* on the basis that no evidence had been introduced by the petitioners in *Huskey* to meet this burden, whereas evidence was introduced in *England*. Based upon this evidence, the chancellor made a finding of fact that the procedures under the Juvenile Post-Commitment Procedures Act were both inadequate and ineffective.

The sole issue presented by these two cases is that raised by the decision of the lower court that the motions to dismiss were properly overruled. Counsel in *Bodkins* conceded in argument that *Huskey* ful-

ly disposed of the constitutional issue. We are of the opinion that this issue has been answered for the most part, if not completely, by our Supreme Court in *State, ex rel. Huskey v. Hatler, supra.* Granted, there was proof offered in the two cases here under consideration by the petitioners in support of their allegations that relief under the Juvenile Post-Commitment Procedures Act was both ineffective and inadequate, while in *Huskey*, no such proof was offered. While this distinction can be drawn between these two cases, we think it makes no difference.

Insofar as the respondents' motion to dismiss is concerned, a substantial amount of petitioners' proof came from their legal counsel, clinical instructors at Vanderbilt Law School, and supervisors of the Vanderbilt Legal Aid Society. There was testimony to the effect that: (1) There is no law library at Spencer Youth Center; (2) there are no writ writers or jailhouse lawyers at Spencer Youth Center; (3) there is no legal staff at Spencer available to juveniles for the drafting of pleadings and other legal advice.

Through their legal counsel, petitioners offered proof in opposition to respondents' motion to dismiss to the effect that the Vanderbilt Legal Aid Society and the Friends of Spencer, comprised of attorneys and law students, furnished legal assistance and assistance of other types to inmates of Spencer, and that this legal assistance was the only such assistance available to the petitioner to challenge his commitment. Proof was offered by these same witnesses to the effect that there were no similar legal aid programs available in either Gibson or Macon County.

Either as witnesses or in their briefs, counsel for petitioners stated that:

Financial and time restraints dictate the established policy (of the Vanderbilt Legal Aid Society and the Friends of Spencer) that these programs do not offer children (sic) assistance in filing post-commitment relief petitions in distant counties, but that they will do so in Davidson County.

The above is a correct and concise summary of the proof offered by the petitioners which the chancellor used to serve as a basis for his finding of fact to the effect that the act was ineffective and inappropriate, and in distinguishing the *England* case, and as a practical matter, the *Bodkins* case, from *Huskey.*

This testimony in *England* is no different from the allegations asserted by the three petitioners in *Huskey*, in claiming that the procedure provided by the Act was neither adequate nor appropriate. At page 536 in *Huskey*, Justice Brock noted:

Petitioners allege that they cannot afford to employ an attorney to help draft a petition under the Juvenile Post-Commitment Procedures Act and that there are no free legal services available to petitioners in the counties of their commitment; that the Tennessee Department of Corrections has no legal services available in its institutions to help juveniles in its custody in the drafting of a petition for post commitment relief and has not provided for the appointment of counsel for petitioners in the counties of their commitment; that each petitioner has available to him or her free legal services in Davidson County but due to lack of resources such free legal services are not available in the counties from which they were committed...

As they were compelled to do, our Supreme Court in *Huskey*, upon the respondents' motion to dismiss, treated the material allegations of the complaints to be admitted, and construed the complaint as favorable to the petitioners. *Fuerst v. Methodist Hospital South*, 566 S.W.2d 847 (Tenn. 1978); *Sherman v. Yakahi*, 549 F.2d 1287 (9th Cir. 1977).

The chancellor made the following findings of fact in the two cases: (a) No attorneys are available to petitioners in the county of commitment to file post-commitment petitions; (b) legal assistance is available in the county of confinement to assist the inmates in preparing and filing petitions in Davidson County; and (c) these conditions, coupled with the requirement of

the act that post-commitment petitions be filed in the county of commitment, have the effect of depriving the inmates in a Davidson County institution of access to legal counsel.

The legal ramifications of these facts were more than adequately handled in *Huskey*, supra, at page 537:

> We find no particular in which the relief and procedure authorized by the Juvenile Post-Commitment Procedures Act is either inadequate or inappropriate for the claims asserted by petitioners. That Davidson County is a forum more convenient than the counties of petitioners' commitment or that petitioners' present legal counsel will not be available to represent them in presenting their claims in the counties of their commitment does not, in a legal sense, render the Juvenile Post-Commitment Procedures Act remedy inappropriate or inadequate. The juvenile's right to legal counsel is the same under the new act as under the *habeas corpus* statutes. T.C.A., § 37–1720. The Legislature has not provided that inconvenience of the forum authorized by the Juvenile Post-Commitment Procedures Act shall be deemed ground for authorizing a claimant to disregard the remedy afforded by the Juvenile Post-Commitment Procedures Act and, instead, file his claim as one for *habeas corpus* in the forum nearest to the petitioners' place of confinement. Indeed, one of the principal objectives sought to be accomplished by the new . . . The statute itself, as well as the legislative history surrounding its enactment, make it clear that the remedy thus provided is to be exclusive, leaving the remedy of *habeas corpus* available only in those rare cases in which the new remedy does not appear to be "adequate and appropriate."

The petitioners' right to legal counsel is the same under the Juvenile Post-Commitment Procedures Act as under the habeas corpus statutes. T.C.A. Sec. 37–1720.

While there was proof to the effect that there were no programs comparable to the Vanderbilt Legal Aid Society in either Gibson or Macon Counties, there was absolutely no proof to the effect that there were no practicing lawyers in either county who could be appointed by the court to represent either inmate.

For the reasons stated above, we conclude that the relief and procedure authorized by the Juvenile Post-Commitment Procedures Act are neither inadequate nor ineffective as to these petitioners. Accordingly, the motions to dismiss should have been granted. Under the Act, the venue of such proceedings has been localized in the county in which the judgment of commitment was rendered. T.C.A. Sec. 37–1703.

The decrees of the Chancery Court are reversed and the petitions dismissed. The costs in this Court are taxed against the original petitioners.

MATHERNE and SUMMERS, JJ., concur.